IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOUTH CENTRAL INDUSTRIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-802-J |
| | ) |
| KERRTAS MARKETING, LLC; and | ) |
| SHAMROCK'S DISCOUNT JANITOR | ) |
| SUPPLY, INC., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT KERRTAS MARKETING, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Kerrtas Marketing, LLC ("Kerrtas") respectfully submits this reply in response to Plaintiff's Response to Defendant Kerrtas Marketing, LLC's Motion to Dismiss and Brief in Support [Doc. No. 13], and in further support of Kerrtas' Motion to Dismiss [Doc. No. 9].

Because Kerrtas contests it, Plaintiff has the burden of establishing that the Court has jurisdiction in this case. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). If the Court does not hold an evidentiary hearing, Plaintiff must therefore make a *prima facie* showing that jurisdiction exists. *Id.* Here, Plaintiff has failed to demonstrate that Kerrtas established sufficient minimum contacts with Oklahoma for this Court to exercise jurisdiction over it. As a result, the Court should dismiss Kerrtas for lack of personal jurisdiction. *See Rodgers v. Fallin*, No. CIV-12-171-D, 2013 WL 149723, at *6 (W.D. Okla. Jan. 14, 2013) ("Where a court reaches [the] conclusion [that personal jurisdiction is lacking], it must dismiss the claims without prejudice or, in the interest of

1

justice, transfer the action to another forum."). Even if Kerrtas had sufficient minimum contacts with Oklahoma, however, exercising jurisdiction over Kerrtas offends the traditional notions of fair play and substantial justice.

I.  **Minimum Contacts**

Plaintiff argues minimum contacts exist for three reasons: (1) a purchase order generated by Plaintiff; (2) email and telephone communications between the parties; and (3) Plaintiff's payment to Kerrtas that Kerrtas forwarded to Kerrtas Global ("Global").

*a. The Purchase Order and Invoice*

Plaintiff places great weight on the alleged contract between Plaintiff and Kerrtas. Plaintiff asserts that it entered into a contract with Kerrtas to purchase nitrile gloves. *See* Doc. No. 13, p.3.[1] The only document Plaintiff proffers as alleged evidence of this contract is a purchase order generated by Plaintiff dated September 29, 2020. Plaintiff ignores the fact, however, that in creating the order, Plaintiff improperly listed Kerrtas as the vendor. The actual vendor for the purchase order was Global, as demonstrated by the fact that Global sent an invoice to Plaintiff on September 29, 2020 to memorialize the purchase of nitrile gloves. *See* Doc. No. 9-1, Ex. F. These facts lead to two conclusions.

First, the purchase order generated by Plaintiff does not factor into the personal jurisdiction analysis because it is only Kerrtas' conduct that matters for personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[I]t is the defendant's

---

[1] Plaintiff also asserts that a contract existed between Plaintiff and Shamrock's Discount Janitor Supply, Inc. ("Shamrock") for the purchase of gloves. Doc. No. 13, p.2. These allegations do not pertain to Kerrtas, and the only alleged contract that is relevant to Kerrtas is discussed on pages 3–4 of Plaintiff's Response.

conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").

Second, as Plaintiff implicitly recognized when it conceded that the initial communications between Plaintiff and Kerrtas resulted in an invoice from Global, Doc. No. 13, p.3, to the extent the unilateral creation of a purchase order by the Plaintiff could establish a contract, that contract was between Plaintiff and Global—not Kerrtas. The invoice from Global itemized the terms of the transaction and the cost of the gloves. *See* Doc. No. 9-1, Ex. F. The invoice also originated in Malaysia, and it directed Plaintiff to send all correspondence regarding the transaction to Malaysia. *Id.* And, payment of the invoice was to be made to Global in Malaysia. Plaintiff solicited Kerrtas' help, and Kerrtas merely connected Plaintiff to Global to fulfill Plaintiff's need for gloves. Kerrtas never generated any purchase order, invoice, or other document reflecting an agreement between it and Plaintiff.

Even if Plaintiff's purchase order created a contract between Plaintiff and Kerrtas, "an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020). In analyzing contracts, courts place greater weight on business negotiations, future consequences, and the actual course of dealing. *Id.* To establish personal jurisdiction, then, a contract must create **continuing** relationships and obligations with citizens of the forum state. *See TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1287–88 (10th Cir. 2007).

Here, the entire business relationship consisted of a single transaction over a very brief period of time. The transaction was not negotiated or executed in person, and the parties did not anticipate future contracts or dealings to stem from this transaction. Moreover, the actual course of dealing involved Kerrtas acting as a conduit between Plaintiff and Global. Thus, the relationship between Kerrtas and Plaintiff was not of a "continuing" nature but was instead random, fortuitous, and attenuated. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . ." (internal citation omitted)).

### b. Communications

Plaintiff also relies on the communications between Plaintiff and Kerrtas in an attempt to prove that an ongoing business relationship existed. Interestingly, Plaintiff concedes that it initiated communications with Kerrtas. Doc. No. 13, p.3. As part of these initial communications, Plaintiff states that several emails were exchanged between the parties over a two-day period on September 28 and 29, 2020. *Id.*[2]

Plaintiff then states that "many" emails, phone calls, and video conferences occurred between Kerrtas and Plaintiff after the initial communications. Doc. No. 13, pp.4, 8. Notably, however, Plaintiff uses only general, conclusory terms like "many" and "multitude" to describe these alleged communications. *Id.* pp.4, 8, 9. Plaintiff does not provide specific details such as dates, length of calls, the subject of the calls, or any other

---

[2] Kerrtas has already conceded that two phone calls occurred at the outset of the transaction. *See* Decl. of Charles Acker, Doc. No. 9-1, ¶ 10.

specific factual details to support these assertions. Nor does Plaintiff attach any evidence to support their conclusory allegations.

Importantly, as Plaintiff concedes, even if Plaintiff could establish the factual circumstances showing a multitude of communication, such would be insufficient, without more, to establish a business relationship for purposes of personal jurisdiction. Doc. No. 13, p.8 ("Although communications are not sufficient in themselves to establish minimum contacts, such communications provide evidence that a defendant pursued a continuing business relationship with the forum state resident."). *See also Dental Dynamic, LLC¸* 946 F.3d at 1230–31 (finding that general, conclusory allegations were insufficient to establish personal jurisdiction); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (finding that certain communications may provide sufficient contacts, but it is the nature of those contacts that matters for jurisdiction).

This conclusion is only buttressed by the fact that the communications at issue in this case relate to a **<u>single</u>** transaction that arose because of the shortage of PPE due to a global pandemic. Kerrtas connected Plaintiff with Global, a Malaysian company, to aid Plaintiff in sourcing PPE from Malaysia because of the difficulty of purchasing such PPE through Plaintiff's regular broker, LifeSpaces Innovation Group, LLC. Simply put, Kerrtas' contacts with Plaintiff were neither voluminous enough nor substantive enough to establish an ongoing business relationship. *See Anderson Energy Grp. (Ohio), LLC v. Endeavor, Ohio, LLC*, No. 12-CV-430-GKF-TLW, 2013 WL 1910389, at *6 (N.D. Okla. May 8, 2013) (finding that a few contacts were insufficient to confer personal jurisdiction where the contacts were incidental to a transaction that occurred elsewhere).

### c. Payment

Finally, in a last-ditch effort, Plaintiff asserts that wiring funds to Kerrtas evidences that a contract existed between Plaintiff and Kerrtas. While Kerrtas does not dispute that Plaintiff sent funds to Kerrtas in Nebraska, this is not evidence of Kerrtas' purposeful availment of Oklahoma. Indeed, Kerrtas did not travel to Oklahoma to take the down payment, nor did Kerrtas deposit the funds in an Oklahoma banking institution. Nor did Kerrtas hold onto those funds; instead, Kerrtas wired the down payment to Global.

On this point, *Blakes v. DynCorp Int'l, L.L.C.* from the Fifth Circuit is instructive. 732 F. App'x 346 (5th Cir. 2018). There, a Delaware corporation headquartered in Virginia hired an employee who lived in Louisiana to perform a contract in Afghanistan, which eventually resulted in the employee suing the corporation in Louisiana. *Id.* at *347. The district court found that no personal jurisdiction existed over the corporation, and the Fifth Circuit affirmed. *Id.* The Fifth Circuit reasoned that the corporation had no physical presence in Louisiana, and it communicated with the employee via telephone and email. *Id.* at *348. Further, the contract was signed in Florida, and it was to be performed in Afghanistan. *Id.* The only connection the corporation had to Louisiana, then, was depositing the employee's wages into a Louisiana bank account. *Id.* This was insufficient to establish minimum contacts.

Here, there is an even stronger case that minimum contacts do not exist. Plaintiff, in Oklahoma, wired the deposit to Kerrtas in Nebraska. The deposit, however, should have gone to Global in Malaysia, and once Kerrtas received the deposit, it was wired directly to Global. The funds traveled outside of Oklahoma to Nebraska and then from Nebraska to

Malaysia. Plaintiff's unilateral decision to wire the deposit to Kerrtas in Nebraska is insufficient to establish Kerrtas' minimum contacts with Oklahoma.

II. **Fair Play and Substantial Justice**[3]

Even if the minimum contacts test was satisfied—which it is not—the exercise of personal jurisdiction does not comport with traditional notions of fair play and substantial justice.[4]

a. **Burden on Defendant**

Plaintiff emphasizes the difficulty of suing Shamrock in Oklahoma and potentially having to bring a separate suit against Kerrtas in Nebraska. *See* Doc. No. 13, p.12. **Plaintiff's burden is not part of the Court's analysis.** Indeed, the analysis is whether exercising personal jurisdiction over the **defendant** would offend the notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945). In other words, the first prong of a "fair play and substantial justice" analysis focuses solely on the "burden on the defendant." *OMI Holdings*, 149 F.3d 1086, 1095 (10th Cir. 1998), and the Court should ignore Plaintiff's alleged burden in litigating elsewhere.

---

[3] Plaintiff discusses a fifth factor—the shared interest of the several states in furthering fundamental substantive social policies—but concedes that it is not applicable with the given facts. *See* Doc. No. 13, p.15. Thus, Kerrtas addresses only the four factors at issue.

[4] The Court need not reach this prong of the analysis because the personal jurisdiction analysis fails at the minimum contacts prong. Because Plaintiff asserted these points in its response, however, Kerrtas replies to each prong accordingly.

Plaintiff also argues that much of the litigation process may be done electronically, and as such, there is no burden on Kerrtas. Doc. No. 13, p.11. Although certain elements of discovery can be completed electronically, this does not negate the value of in-person client meetings to examine documents obtained during discovery or the value of preparing a client in person for a deposition. If this Court finds that personal jurisdiction exists, there is a strong possibility that Kerrtas' likely corporate representative, Charles Acker, could be compelled to travel to Oklahoma to sit for a deposition pursuant to Fed. R. Civ. P. 30(b)(6). Further, if this case ultimately proceeds to trial, Kerrtas, through its corporate representative, will be forced to travel to Oklahoma and expend thousands of dollars to defend an action in a forum in which Kerrtas had a single random, fortuitous transaction, and in which Kerrtas did not seek to establish an ongoing business relationship.

### b. Forum State's Interest

As to the second prong, Oklahoma's interest in adjudicating the dispute, Plaintiff asserts that protecting "Oklahoma residents against breaches of contract by nonresidents is of the utmost importance." Doc. No. 13, p.13. Based on this allegation alone, Plaintiff summarily concludes that "the second factor weighs heavily in Plaintiff's favor." *Id.*

Kerrtas' Motion recognized Oklahoma's interest in providing a forum for the Plaintiff. *See* Doc. No. 9, p.9 ("While Kerrtas admits Oklahoma could have an interest in providing a forum for Plaintiff . . . ."). Kerrtas reasserts the points raised in its Motion—to which Plaintiff did not respond. *Id.* ("[T]here is no reason to think Oklahoma common law applies . . . or that, even if it did, another jurisdiction could not apply Oklahoma law

correctly."). This second factor does not weigh in favor of exercising jurisdiction over Kerrtas in Oklahoma.

### c. Plaintiff's Interest in Obtaining Convenient and Effective Relief

As to the third factor, Plaintiff's interest in obtaining convenient and effective relief, Plaintiff relies on the lone argument that Plaintiff would be forced to bring two lawsuits—one against Shamrock and another against Kerrtas. While this may prove less convenient, Plaintiff still has the ability to seek the relief it believes it is entitled to against Kerrtas elsewhere. Although it may pose burden to Plaintiff, it is not such that it would greatly diminish Plaintiff's chances of recovery. Indeed, there is no indication Plaintiff's ability to or chances of recovery would be any different in another forum, and Plaintiff does not argue so in its Response. Because alternative forums exist, this factor does not offset the substantial burden that Kerrtas would face in traveling to Oklahoma to defend a lawsuit that stemmed from an isolated transaction.

### d. Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies

The fourth factor looks to the location of witnesses, where the wrong occurred, what substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. Plaintiff asserts that this factor weighs "heavily in keeping the case in Oklahoma." Doc. No. 13, p.14. The parties agree that the witnesses are located all over the United States and possibly in Malaysia. *See* Doc. No. 9, p.10; Doc. No. 13, p.14.

Plaintiff asserts that the underlying wrong occurred in Oklahoma, but this assumes that a contract existed between Kerrtas and Plaintiff in the first place. As discussed above,

Kerrtas does not have sufficient minimum contacts to exercise personal jurisdiction over it in Oklahoma. Kerrtas communicated with Plaintiff while in Nebraska. Kerrtas' representative, Mr. Acker, never traveled to Oklahoma. The subject of the transaction was goods traveling from Global in Malaysia to Plaintiff in Oklahoma. Kerrtas played no part in the alleged underlying wrong—*i.e*., Global's failure to supply the ordered gloves.

Plaintiff asserts that maintaining this action in Oklahoma is necessary to prevent piecemeal litigation and that Kerrtas should be forced to come to Oklahoma to defend suit because Plaintiff cannot maintain an action against Shamrock in Nebraska. The claims against Shamrock relate to a separate contract between Shamrock and Plaintiff. As stated previously, just because it would be more difficult for Plaintiff to maintain separate suits regarding separate contracts against separate defendants does not confer jurisdiction over Kerrtas here. Kerrtas should not be forced to travel to Oklahoma to defend itself when (1) minimum contacts are not established, and (2) even if they were, exercising jurisdiction would offend the notions of fair play and substantial justice.

## **CONCLUSION**

For the foregoing reasons, and for the reasons in Kerrtas' Motion to Dismiss, Kerrtas respectfully requests the Court dismiss Plaintiff's claims against Kerrtas pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Respectfully submitted,

*/s/ Curtis J. Thomas*
Curtis J. Thomas, OBA #22747
Cole McLanahan, OBA #33566
McAfee & Taft A Professional Corporation
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102
Telephone:  405-235-9621
Fax:  405-270-7229
curtis.thomas@mcafeetaft.com
cole.mclanahan@mcafeetaft.com
***Attorneys for Defendant Kerrtas Marketing, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System in the United States District Court for the Western District of Oklahoma.

*/s/ Curtis J. Thomas*